UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:02-cr-4-MOC
5:03-cr-7-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| vs. | ) | |
| | ) | **ORDER** |
| SAMUEL CLINT BLANCHER, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant Samuel Clint Blancher's Motion for Compassionate Release/Reduction of Sentence. (Case No. 5:02-cr-4, Doc. Nos. 42, 47; Case No. 5:03-cr-7, Doc. Nos. 19, 24). Defendant is represented by Joshua Carpenter and Megan Huffman of the Federal Defenders of Western District of North Carolina, Inc. The Government has responded in opposition to the motion, and Defendant has filed a Reply. (Case No. 5:02-cr-4, Doc. Nos. 52, 53; Case No. 5:03-cr-7, Doc. Nos. 29, 30). Furthermore, the Court held a hearing on Defendant's motion on March 22, 2023. For the following reasons, Defendant's motion will be **DENIED**.

I.     BACKGROUND

A. Criminal Conduct

In June and July of 2001, Defendant committed two bank robberies—one in Statesville, North Carolina, and one in Shelby, North Carolina. (WDNC Case No. 5:02-cr-4, Doc. No. 38 ¶¶ 8–11). During the first bank robbery, Defendant demanded money from a teller's "reserve" and threatened to "shoot [the teller] between the eyes" if the teller refused. (Id., Doc. No. 38 ¶ 8). Defendant stole $17,000 from that bank. (Id.). During the second robbery, Defendant similarly demanded money from a teller's reserve drawer. (Id., Doc. No. 38 ¶ 9). When the teller

1

responded by attempting to give Defendant a package of bait bills and a dye pack, Defendant told her he would "blow her fucking head off" as he counted, "one, two, three . . . ." (Id.). The teller then gave Defendant more than $16,000 from her reserve drawer. (Id.).

When he committed these offenses, Defendant, who was 27 years old, had previously been convicted of two counts of breaking and entering, escape, theft, financial transaction card fraud, assault with a deadly weapon, and common law robbery, among other offenses. (Id., Doc. No. 38 ¶¶ 45, 47, 57–58, 61, 73, 75). When sentenced to probation or prison, Defendant consistently violated the terms of his probation and parole. (Id., Doc. No. 38 ¶¶ 47, 56–61, 67).

In May 2001, Defendant committed the armed robbery of a convenience store and was sentenced as a habitual offender to at least 125 months in prison. (Id., Doc. No. 38 ¶¶ 73, 75). In January 2002, a federal grand jury returned an indictment against Defendant, charging him with the first bank robbery. (Id., Doc. No. 1). In January 2003, the United States Attorney charged Defendant with the second bank robbery by a bill of information. (WDNC Case No. 5:03-cr-7, Doc. No. 1). Defendant pleaded guilty without a plea agreement to both charges. (WDNC Case No. 5:02-cr-4, Doc. No. 38 ¶ 6).

This Court's probation office submitted a presentence report and determined that Defendant was a career offender based on prior breaking and entering, assault, and robbery offenses. (Id., Doc. No. 38 ¶ 40). Based on a total offense level of 29 and a criminal history category of VI, the Sentencing Guidelines called for a sentence of between 151 and 188 months in prison. (Id., Doc. No. 38 ¶ 123). This Court sentenced Defendant to 188 months in prison for both bank robberies, to be served concurrently with each other and to be served consecutively to his state sentence for common-law robbery. (Id., Doc. No. 24 at 2).

As of October 2002, Defendant was credited with having served 117 months in the

2

Case 5:03-cr-00007-MOC   Document 33   Filed 04/26/23   Page 2 of 7

Bureau of Prisons ("BOP").[1] (Id., Doc. No. 47-1 at 2). While in BOP custody, Defendant has received three disciplinary citations, including one citation in July 2021 for fighting and one in 2015 for assault without serious injury. (Id.). Defendant has completed 25 educational courses or work assignments. (Id.).

### B. Request for Compassionate Release

Defendant has exhausted his administrative remedies with BOP before filing the pending motion. Defendant asks this Court to grant him compassionate release, arguing that if he were sentenced today, he likely would receive a shorter sentence. (Id., Doc. No. 47 at 1–2).

## II. DISCUSSION

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability

---

[1] The BOP website indicates that Defendant is 49 years old, and his release date is June 25, 2027.

of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the BOP, the defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id.

Defendant has not established an extraordinary and compelling reason for compassionate release. Defendant has not alleged that he satisfies any of the criteria for compassionate release authorized in section 1B1.13, nor has he alleged any disparity between the sentence he received and the sentence "provided for under the First Step Act." McCoy, 981 F.3d at 286. Instead, Defendant asks this Court to exercise its discretion to grant him compassionate release because if sentenced today, he would not be classified as a career offender and would receive a lower

4

sentence. (WDNC Case No. 5:02-cr-4, Doc. No. 47 at 1–2). Defendant asserts that he would not be classified as a career offender because his breaking-and-entering, escape, and assault offenses do not qualify as "crimes of violence" under the career-offender guideline. See U.S.S.G. § 4B1.2(b).

Even if Defendant would not be classified as a career offender were he sentenced today, he has not identified an extraordinary and compelling reason for compassionate release. First, even if Defendant had not formally been classified as a career offender under U.S.S.G. § 4B1.2, his extensive and unbroken pattern of criminal offenses and his 47 criminal history points would have justified an upward departure based on the seriousness of Defendant's criminal history and the inadequate representation of the seriousness of his criminal history or likelihood of recidivism in the resulting guideline range. See U.S.S.G. § 4A1.3. Defendant's numerous prior violent convictions—regardless of whether they were formally classified as crimes of violence— would have warranted an upward departure to the career-offender guideline range.

Second, non-retroactive changes to the Sentencing Guidelines do not constitute an extraordinary and compelling reason to grant compassionate release. A non-retroactive change in the law does not create an error, and the background presumption of changes to the law is that they do not affect past defendants' convictions or sentences. See, e.g., 1 U.S.C. §§ 109, 110 (providing that repeal or revision of statutes does not affect criminal liability for convictions or offenses committed prior to the repeal or revision date). Additionally, post-sentencing changes in the law ordinarily create disparities between those sentenced before and those sentenced after. Far from being extraordinary, they are instead "the ordinary practice." See Dorsey v. United States, 567 U.S. 260, 280–81 (2012) (explaining that "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences").

In addition to finding that Defendant has not shown extraordinary and compelling reasons for his early release, the Court further finds that the factors set forth in 18 U.S.C. § 3553(a) counsel against release. Although Defendant has completed certain programming while in BOP custody and has received a positive recommendation based on his progress, his history and characteristics weigh against the granting of this extraordinary relief. As described above, Defendant's criminal history is extensive and violent and includes assault offenses, robbery, and breaking and entering. Additionally, he has received three disciplinary citations in prison, including one for fighting only a year and a half ago. Defendant notes that he did not instigate that fight, but he engaged in the fight nonetheless and admitted the violation. Defendant also asserts that he suffered from a tragic and dysfunctional childhood and that he has support from his family and a post-imprisonment job opportunity. But those circumstances do not outweigh his violent and persistent criminal history and the threat he continues to pose based on that history and his misconduct in prison.

The nature and circumstances of Defendant's offense conduct also weighs against any discretionary sentencing relief. Although Defendant asserts that he did not have a weapon and that his robberies were not violent robberies, he threatened to shoot one teller victim between the eyes and to blow his second teller victim's head off. Regardless of whether he carried a weapon, his conduct created a significant risk of violence to his victims.

Defendant suggests that his sentence creates unwarranted sentence disparities. The Court disagrees. As explained above, non-retroactive changes to the Sentencing Guidelines are not extraordinary and do not create unwarranted sentence disparities. They are simply the result of the Sentencing Commission's ordinary and considered decision that certain guideline amendments do not apply retroactively.

Defendant's state sentence, to which his federal sentence is running consecutively, also does not create an unwarranted sentence disparity. Defendant received that sentence for an unrelated armed convenience store robbery that he committed before his bank robberies. Under Sentencing Guidelines § 5G1.3(d), this Court had the discretion to run Defendant's bank-robbery sentences "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment" for the bank robbery offenses. This Court decided that a sentence at the top of the guideline range was warranted, and the Court exercised its discretion under Section 5G1.3(d) to run that sentence consecutively to Defendant's state sentence. This did not create any disparity, let alone a disparity that was unwarranted.

For all these reasons, the Court will deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Case No. 5:02-cr-4, Doc. Nos. 42, 47; Case No. 5:03-cr-7, Doc. Nos. 19, 24), is **DENIED**.

Signed: April 26, 2023

Max O. Cogburn Jr
United States District Judge